# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

Deandre Cossey             )
                           )
    Plaintiff,      )
                           )
v.                         )  No. 17 CV 50133
                           )  Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting )
Commissioner of Social Security,[1] )
                           )
    Defendant.      )

## MEMORANDUM OPINION AND ORDER

This disability benefits appeal focuses on an extremely narrow question—namely, exactly how high should plaintiff's left leg be elevated to allow him to work at a sedentary job.

Plaintiff has had chronic swelling in his left leg for many years. The medical diagnosis is lymphedema, and it is unclear what caused it. According to plaintiff, the swelling is painful and can be severe, sometimes expanding his left leg to twice the size of his right leg.

At the second of two hearings, the administrative law judge ("ALJ") asked plaintiff about two doctor notes stating that plaintiff would need to elevate his left leg. The ALJ noted that neither doctor indicated how high the leg should be elevated. The ALJ then pointed out that plaintiff testified at the first hearing that his doctors told him to elevate his leg 90 degrees, which the ALJ translated into the phrase waist level.

Later in the second hearing, the ALJ asked the medical expert, Dr. Semerdjian, about the two doctor notes. He agreed that elevating the leg can be "part of the treatment" for lymphedema, but stated that it is usually done at night. Dr. Semerdjian thought plaintiff should wear a compression stocking during the day, and should try other measures such as physical

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

1

therapy and a pump. It was Dr. Semerdjian's opinion that elevating the leg during the day was not a "good solution" because it essentially would "confin[e]" plaintiff to becoming an "invalid." R. 67.

The ALJ then asked Dr. Semerdjian to pick among the following options regarding leg elevation:

> Doctor, the big question here is whether he needs any prescription while he's sitting to elevate that leg to waist level, elevate that leg to a height of 12 to 16 inches, elevate that leg at all. What's your point of view.

R. 70. The recommendation to elevate the leg 12 to 16 inches was one that the ALJ apparently came up with on his own. This option had not been discussed earlier in the hearing, nor was it based on any doctor's recommendation insofar as this Court can tell. Dr. Semerdjian essentially answered that plaintiff did not need to elevate his leg at all during the day because he should be using a compression stocking. Dr. Semerdjian was never asked how high plaintiff's leg should be elevated. He thus gave no opinion on elevating 12 to 16 inches versus waist height.

The leg elevation question arose once more in the hearing, in the following colloquy between the ALJ and the vocational expert:

> Q And then as far as it goes what happens when I introduce the element, we'll start with the need to elevate the left lower extremity, number one, we'll say 12 to 16 inches during the course of the day. Does that affect the work availability?
>
> A No, it does not.
>
> Q Why not?
>
> A At 12 to 16 inches it does not interfere with the work place or their ability to perform the job task so it would be allowed in these jobs.
>
> Q What happens if I change the picture and I say instead of 12 to 16 inches now that left lower extremity has to be at waist level throughout the day. What does that do?

>       A   At waist level they would be unable to perform these jobs. The level that
> it would be elevated it may interfere with the work place so they would essentially
> have to kind of move away from the work station to be able to elevate their leg that
> height.

R. 82-83.

In his decision, the ALJ agreed that plaintiff's lymphedema was serious enough to include a leg elevation limitation. However, the ALJ found that 12 to 16 inches was sufficient. The parties focus their arguments on this aspect of the decision. As explained below, the Court finds that a remand is required because several unresolved questions exist. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (ALJs must show the path of their reasoning).

The primary question is why the ALJ chose 12 to 16 inches. What was the origin of this limitation? Was there something significant about this height? What was the medical theory behind it? The ALJ never provided an explanation. Plaintiff speculates that the ALJ was "thinking of a footstool" and suggests that he strategically chose this height because vocational experts have found that it would be tolerated by employers. Dkt. #9 at 9. Perhaps plaintiff is correct, but the Court has no basis for confirming or disconfirming these speculations. The Government, in its response brief, argues that the ALJ believed that waist-high elevation was an "extreme height" and was an "out-of-the-ordinary restriction." Dkt. #10 at 4. But this argument is also speculative because the ALJ never explicitly made such a finding and because the Government has not cited to any authority to support its contention that a waist-high elevation was considered extreme.

In reviewing the competing arguments, this Court stumbled in trying to sort through the various height metrics. For one thing, different analogies were employed, from body parts (waists) to household objects (footstools). One relevant question is how many inches is waist

height, particular if one is sitting. Presumably it would be the height of the seat. It is not obvious to this Court that this height is always higher than 16 inches.[2]

More substantively, no one has attempted to connect a particular height recommendation to an underlying medical rationale. Did plaintiff's doctors recommend that his foot be elevated simply to relieve pain? If so, then the appropriate height might be more of a subjective and empirical question. Or was the elevation meant to help drain lymphatic fluid from the leg? Neither the ALJ, nor any medical expert, provided an explanation. In the Mayo Clinic website's discussion of lymphedema, it refers at one point to elevation of the leg "above the level of your heart."[3] This statement at least hints at one possible medical rationale, although the website does not provide an explanation. However, this statement raises more questions. One is whether the 12-to-16-inch recommendation is based on the assumption that the person would be lying down, in which case the leg would be above heart level.

As for the case law, the Government has not cited to any cases supporting its claim that waist-high elevation is unusual. Plaintiff cited to a few cases, one of which was *Ellis v. Astrue*, 2010 WL 3782265 (N.D. Ind. Sept. 20, 2010). The plaintiff there claimed that she needed to elevate her legs at least 12 inches, but the ALJ concluded that elevation to stool height, which the ALJ defined as 8 inches, was sufficient. The Court remanded, finding that it was "critical" for the ALJ to resolve this four-inch "ambiguity" and noted that the ALJ had not relied on any medical opinion when deciding the issue. *Id.* at *15. This case provides indirect support plaintiff's argument by illustrating the need for a precise and clear answers to these questions.

---

[2] Yet another consideration is whether there are other factors aside from height. It may be that elevating the leg to waist level while sitting (*i.e.* at 90 degrees as plaintiff originally stated) is not feasible because the leg would protrude horizontally, thereby forcing the person to sit too far back from the workspace. The vocational expert seemed to be raising this concern in her testimony.

[3] It should be noted that this recommendation is in a section discussing prevention of lymphedema specifically in relation to surgery involving lymph nodes.

In sum, the Court finds that these unresolved questions are enough to justify a remand. In addition, because Dr. Semerdjian never provided an opinion about the appropriate level of elevation, the ALJ's decision was based on his layperson intuitions. This is another ground for remand. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (ALJ improperly "played doctor"). There are a few other questions touched on in the briefs, such as whether plaintiff had consistently worn compression stockings. The Court will not address these questions because the case is already being remanded and because the record was vague about how the ALJ resolved these issues. In general, however, the ALJ should give more attention to the broader question of whether plaintiff was compliant with treatment recommendations. At several points in the decision, the ALJ indirectly suggested that plaintiff had not been compliant, but the factual basis for these contentions was murky. Additionally, the ALJ should contact plaintiff's treating physicians to obtain a more detailed explanation about their treatment approaches and specifically why and how plaintiff's leg should be elevated if he were to work.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: September 13, 2018            By: _____
                                         Iain D. Johnston
                                         United States Magistrate Judge